1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JASON PAUL LEGARE,

             Plaintiff,

    v.

J. MICHAEL LEE, et al.,

             Defendants.

CASE NO. ED CV 15-00833-JVS (AFM)

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

## I.      SUMMARY OF PROCEEDINGS

On April 28, 2015, plaintiff, an inmate at Chuckawalla Valley State Prison ("CVSP") in Blythe, California, filed a Complaint in this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  He subsequently was granted leave to proceed without prepayment of the full filing fee.  The Complaint names as defendants Chief Medical Officer James Michael Lee ("Dr. M. Lee"), Dr. Sitaravamma Murakonda, Nurse Sally Rodriguez, Nurse Nora Hart, Nurse Marisa Kalian, Nurse Marietou Kurtzman, Nurse Yolanda Soto, Nurse Diana Knapp (aka R. Rosas and erroneously sued herein as "D. Capp"), and Correctional Officer Kwame Kuanda (erroneously sued herein as "K. Kunda") (collectively the "Correctional Defendants").  The Correctional Defendants, apart from Correctional Officer

Kuanda, are all named in their official as well as individual capacities. (Docket No. 1 at 8-13.) In addition, plaintiff names as defendants the John F. Kennedy Memorial Hospital ("Hospital"), and Dr. Samuel S. Lee ("Dr. S. Lee"), a urologist with privileges at the Hospital. (*Id.* at 9.)

Plaintiff's Complaint raises one claim against all defendants for deliberate indifference to his serious medical needs following surgery performed at the Hospital on September 10, 2014. (Docket No. 1 at 4, 13-20.)[1] Plaintiff prays for declaratory relief and compensatory and punitive damages. (*Id.* at 5, 8.)

On September 11, 2015, the Correctional Defendants (Dr. M. Lee, Dr. Murakonda, Nurse Rodriguez, Nurse Hart, Nurse Kalian, Nurse Kurtzman, Nurse Soto, Nurse Knapp, and Correctional Officer Kuanda) filed a Motion to Dismiss ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6), contending that the case should be dismissed because the allegations in the Complaint are insufficient to state a claim pursuant to the Eighth Amendment, and plaintiff failed to allege facts to show that the Correctional Defendants acted with an evil motive or intent as is required to be entitled to punitive damages. (*See* Motion, Docket No. 51.) Following an extension of time, plaintiff filed Opposition to the Motion ("Opp.") on November 25, 2015. (*See* Docket No. 59.) The Correctional Defendants filed a Reply thereto on December 4, 2015. (*See* Docket No. 61.)[2]

As set forth below, the Court grants the Correctional Defendants' Motion, in part, and dismisses the Complaint with leave to amend.

---

[1]   Plaintiff has voluntarily dropped his state law tort claim from this action. (*See* Docket No. 59 at 1-2.) Accordingly, the Court need not address this claim further.

[2]   In addition, defendant Dr. S. Lee filed a Motion to set aside default on November 25, 2015. Plaintiff was ordered that, if he wished to oppose this motion, he must file opposition within thirty days. (*See* Docket Nos. 58, 60.) Plaintiff failed to timely file opposition to the Motion to set aside default or to request an extension of time in which to do so. In a separate Order, the Court has granted Dr. S. Lee's Motion to set aside the default.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff was transferred to CVSP on July 15, 2014.  At that time, he was suffering from "acute left hydrocele."  (Docket No. 1 at 13.)  On September 10, 2014, plaintiff underwent a "left hydroceletomy with scrotal exploration" at the outside Hospital.  (*Id.*)  The surgical procedure was "performed without a glitch" by Dr. S. Lee.  (*Id.*)  "An eight (8) inch plus penrose drain was stitched in place to the scrotum for drainage," and Dr. S. Lee "forwarded post-op instructions to medical staff at CVSP for the removal of the penrose drain for the following day."  Dr. S. Lee "did not instruct the institution as to post-op dressing changes to surgical area."  (*Id.*)

Back at CVSP, plaintiff "found the surgical area was blood soaked."  He reported to the clinic and informed defendant Nurse Soto "that he was bleeding excessively" and requested that the "dressing" be changed.  (*Id.* at 13.)  Nurse Soto refused to change the dressing and refused to "supply plaintiff with gauze."  (*Id.* at 13-14.)  Plaintiff was refused a wheelchair and "forced to walk."  (*Id.* at 14.)

The following day, at approximately 7:30 a.m. on September 11, 2014, plaintiff reported to the CVSP clinic again and informed defendants Nurse Knapp and Nurse Kalian "that he was experiencing excessive bleeding and that the post-op instructions was [sic] for the penrose drain to be removed on that date."  (*Id.*)  Defendants both "refused to examine plaintiff but provided a small amount of gauze and told him to go back to his bed."  Defendants made "comments such as, 'I'm not touching them.'"  (*Id.*)

That same day, at around 10:30 a.m., the bleeding had soaked "the gauze, scrotal support and plaintiff's boxers."  (*Id.*)  Plaintiff notified custody staff and he was "immediately sent" to the clinic.  Plaintiff was "examined by defendants Kalian and Murakonda in the surgical area and was told that the penrose drain was not intact."  (*Id.*)  Plaintiff disagreed, and he told defendants that he "could feel it."  He requested that the drain be removed.  (*Id.*)  Defendants Murakonda and Kalian

"were adamant that it was not there, refused to change the dressing, and handed plaintiff some gauze" before sending him away.  (*Id*.)  Plaintiff tried to "clean the surgical area without anti-bacterial soap" and to change the dressing himself.  (*Id*.)

The next day, on September 12, 2014, "a lump began developing" along with pain.  Plaintiff reported to the clinic.  He was "refused entry to talk to any medical staff" by defendant Correctional Officers Kuanda who told plaintiff "they were busy, deal with it yourself."  (*Id*. at 14-15.)

On September 15, 2014, the "pain became acute."  Plaintiff again reported to the clinic where he was seen by defendants Dr. Murakonda and Nurse Knapp.  Plaintiff told them about the pain and lump, but the defendants "refused to examine plaintiff."  He was sent away.  (*Id*. at 15.)

On September 17, 2014, plaintiff was still suffering acute pain in the surgical area and again reported to the clinic.  He was refused an examination by Nurse Knapp, and he was told by Correctional Officer Kuanda to "leave the clinic area." (*Id*. at 15.)

On September 24, 2014, plaintiff was examined by Dr. Murakonda and Nurse Knapp.  He was told, "it's all normal."  (*Id*.)  Plaintiff informed Dr. Murakonda and Nurse Knapp about the lump and the pain and indicated that he had a "probable infection," but he again was told to leave the clinic area.  (*Id*.)

Plaintiff continued to suffer from pain, headaches, and lack of sleep.  On October 9, 2014, plaintiff was seen by Dr. S. Lee by "telemeds."  Dr. S. Lee ordered an ultrasound.  (*Id*. at 15-16.)  Plaintiff was seen by Dr. Murakonda on October 15, 2014, and he "again pointed out the obvious lump and infection in the surgical area and complained of acute pain."  Dr. Murakonda "refused to examine the scrotum."  (*Id*. at 16.)

On October 17, 2014, the ultrasound results revealed the penrose drain through the protective skin that had "grown around the drain because of the excessive time lapse."  (*Id*.)  Dr. S. Lee performed surgery on October 30, 2014, to

1   remove the drain, which necessitated the "cutting of plaintiff's scrotum." (*Id.*)

2   Dr. S. Lee said that "he had done thousands of these procedures and never has seen

3   this [sic]." (*Id.*)

4       Plaintiff alleges that he suffered an infection of his scrotum, pain, swelling,

5   headaches, loss of sleep, and an additional surgery to remove the penrose drain.

6   (*Id.* at 16-17.)

8   **III.**    **APPLICABLE LEGAL STANDARDS**

9       **A.**    <u>**Motion to Dismiss standard.**</u>

10       A complaint may be dismissed as a matter of law for failure to state a claim

11   for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under

12   a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

13   699 (9th Cir. 1990). In determining whether the pleading states a claim on which

14   relief may be granted, its allegations of material fact must be taken as true and

15   construed in the light most favorable to plaintiff. *See Love v. United States*, 915

16   F.2d 1242, 1245 (9th Cir. 1989). However, the "tenet that a court must accept as

17   true all of the allegations contained in a complaint is inapplicable to legal

18   conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

19       Further, since plaintiff is a prisoner appearing *pro se*, the Court must construe

20   the allegations of the pleading liberally and must afford plaintiff the benefit of any

21   doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.

22   1988); *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a

23   prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the

24   benefit of any doubt' in ascertaining what claims he 'raised in his complaint'")

25   (alteration in original). However, the Supreme Court has held that, "a plaintiff's

26   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

27   than labels and conclusions, and a formulaic recitation of the elements of a cause of

28   action will not do. . . . Factual allegations must be enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'. . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation"), *cert. denied*, 132 S. Ct. 2101 (2012).

In addition, because plaintiff is an inmate proceeding *in forma pauperis* herein, in accordance with the terms of the "Prison Litigation Reform Act of 1995" ("PLRA"), the Court has screened the Complaint for purposes of determining whether the claims against other named defendants are frivolous or malicious; or fail to state a claim on which relief may be granted; or seek monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).  When determining whether a pleading should be dismissed for failure to state a claim under the PLRA, the Court applies the same standard as applied in a motion to dismiss pursuant to Rule 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).

Finally, in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally may not look outside the pleadings without converting the motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  The Court, however, may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting a motion to dismiss into a motion for summary judgment.  *United States*

1   *v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir 2003); *Barron v. Reich*, 13 F.3d 1370,

2   1377 (9th Cir. 1994) (in ruling on a motion to dismiss, a district court may consider

3   "materials of which the court may take judicial notice").

4

5          **B.          <u>Standard for deliberate indifference claim.</u>**

6          The Eighth Amendment's proscription against cruel and unusual punishment

7   also encompasses the government's obligation to provide adequate medical care to

8   those whom it is punishing by incarceration.  *See Estelle v. Gamble*, 429 U.S. 97,

9   103 (1976).   In order to establish a claim under the Eighth Amendment for

10  inadequate medical care, a plaintiff must show that a specific defendant was

11  deliberately indifferent to his serious medical needs.  *See Helling v. McKinney*, 509

12  U.S. 25, 32 (1993); *Estelle*, 429 U.S. at 106.   "This includes both an objective

13  standard – that the deprivation was serious enough to constitute cruel and unusual

14  punishment – and a subjective standard – deliberate indifference."   *Colwell v.*

15  *Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks omitted).

16         First, to meet the objective element of a deliberate indifference claim, "a

17  prisoner must demonstrate the existence of a serious medical need." *Colwell*, 763

18  F.3d at 1066.   "A medical need is serious if failure to treat it will result in

19  significant injury or the 'unnecessary and wanton infliction of pain.'"  *Peralta v.*

20  *Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 946

21  (2015) (internal quotation marks omitted).

22         Second, to meet the subjective element, a prisoner must "demonstrate that the

23  prison official acted with deliberate indifference."  *Toguchi v. Chung*, 391 F.3d

24  1051, 1057 (9th Cir. 2004).   Deliberate indifference may be manifest by the

25  intentional denial, delay or interference with a plaintiff's medical care. *See Estelle*,

26  429 U.S. at 104-05.  The prison official, however, "must not only 'be aware of facts

27  from which the inference could be drawn that a substantial risk of serious harm

28  exists,' but that person 'must also draw the inference.'"  *Toguchi*, 391 F.3d at 1057

7

1  (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   Thus, an inadvertent

2  failure to provide adequate medical care, negligence, a mere delay in medical care

3  (without more), or a difference of opinion over proper medical treatment, all are

4  insufficient to constitute an Eighth Amendment violation.  *See Estelle*, 429 U.S. at

5  105-07; *Toguchi*, 391 F.3d at 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.

6  1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.

7  1985).  Moreover, the Eighth Amendment does not require optimal medical care or

8  even medical care that comports with the community standard of medical care.

9  "[A] complaint that a physician has been negligent in diagnosing or treating a

10  medical condition does not state a valid claim of medical mistreatment under the

11  Eighth Amendment.   Medical malpractice does not become a constitutional

12  violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

14  **IV.    DISCUSSION**

15      A.    <u>**Claims for monetary damages against the Correctional Defendants**</u>

16          <u>**in their official capacities are barred by the Eleventh Amendment.**</u>

17      In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-66 (1989), the

18  Supreme Court held that states, state agencies, and state officials sued in their

19  official capacities are not persons subject to civil rights suits under 42 U.S.C.

20  § 1983.  Further, the Eleventh Amendment bars federal jurisdiction over suits by

21  individuals against a State and its instrumentalities, unless either the State consents

22  to waive its sovereign immunity or Congress abrogates it.  *Pennhurst State School*

23  *& Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).   However, "the eleventh

24  amendment bars actions against state officers sued in their official capacities for

25  past alleged misconduct involving a complainant's federally protected rights, where

26  the nature of the relief sought is retroactive, i.e., money damages." *Bair v. Krug*,

27  853 F.2d 672, 675 (9th Cir. 1988).  To overcome this Eleventh Amendment bar, the

28  State's consent or Congress' intent must be "unequivocally expressed." *Pennhurst*,

465 U.S. at 99.   While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court.   *See BV Engineering v. University of California*, 858 F.2d 1394, 1396 (9th Cir. 1988); *see also Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution does not constitute a waiver of California's Eleventh Amendment immunity). Finally, Congress has not repealed state sovereign immunity against suits brought under 42 U.S.C. § 1983.

Because the California Department of Corrections and Rehabilitation is a state agency, it is immune from civil rights claims raised pursuant to § 1983.  *See Pennhurst*, 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought."); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (the Eleventh Amendment bars claim for injunctive relief against Alabama and its Board of Corrections).  Accordingly, to the extent that plaintiff is purporting to seek monetary damages arising from his alleged civil rights violations from any Correctional Defendant in his or her official capacity, any such claims for monetary damages pursuant to § 1983 are barred by the Eleventh Amendment.

Therefore, if plaintiff desires to pursue this action, he may not state any claims for monetary damages against any defendant in his or her official capacity.

### B. Plaintiff's allegations appear insufficient to state a claim against the supervisory defendants.

In order to state a federal civil rights claim against a particular defendant for violation of his civil rights, plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right guaranteed under the United States Constitution or a federal statute.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Karim-Panahi*, 839 F.2d at 624.  "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in

another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiffs complain].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis in original)).   Further, plaintiff may not maintain a federal civil rights action against any person based solely on his or her supervisory position.  Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior.  *See, e.g., Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  In *Iqbal*, 556 U.S. at 676, the Supreme Court reaffirmed that: "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability."

The Ninth Circuit subsequently has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), *Iqbal* does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."  *See Starr*, 652 F.3d at 1207. Thus, under *Starr*, 652 F.3d at 1207-08 (internal citations omitted, alterations and internal quotation marks in original):

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.
>
> The requisite causal connection can be established … by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  "A supervisor can be liable in his individual

> capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.

In addition, to premise a supervisor's liability on a policy promulgated by the supervisor, a plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, plaintiff names Dr. M. Lee, Nurse Rodriguez, and Nurse Hart solely in their roles as supervisors. No factual allegations in the Complaint allege that these supervisory defendants personally took any action, participated in another's affirmative action, or failed to perform an action that he or she was legally required to do that caused plaintiff's constitutionally inadequate medical treatment. To the contrary, plaintiff merely alleges that each defendant knew or should have known that the medical care providers they supervised were "unfit or incompetent." (Docket No. 1 at 8-11.) The Complaint, however, fails to set forth factual allegations showing that any defendant was "unfit or incompetent." Further, plaintiff's factual allegations pertain only to the alleged failure to provide adequate medical treatment to plaintiff during one isolated incident. To establish a claim of deliberate indifference by a supervisory prison official, plaintiff must set forth factual allegations of the official's continued inaction once he or she became aware that subordinates were engaging in unconstitutional actions. *See Taylor*, 880 F.2d at 1045 (supervisory prison official not liable when no evidence showed he "knew of unconstitutional actions by prison guards under his control and failed to prevent them").

Plaintiff also alleges that the supervisory defendants failed to train staff and "put in place procedures so that plaintiff would receive medically appropriate care."

(*Id.* at 17, 19.)   But plaintiff's Complaint fails to allege that a pattern of unconstitutional medical care existed at the relevant time that would have provided notice to the supervisory defendants that any employee had received inadequate training.   Plaintiff's allegations of a few inadequately trained individuals in connection with one medical condition for one prisoner does not raise an inference either that inadequate training caused the alleged constitutional violation of which plaintiff complains, or that any supervisory defendant was deliberately indifferent to a lack of training.  *See Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (allegations of an isolated instance of a constitutional violation are insufficient to support a "failure to train" theory).   The Court is not required to accept as true plaintiff's bare assertions that his constitutional deprivations resulted from "official policies, customs and pervasive practices."  *See Cholla Ready Mix, Inc.  v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Accordingly, the Court finds that plaintiff's factual allegations, even accepted as true and construed in the light most favorable to plaintiff, are insufficient to state a claim against defendants Dr. M. Lee, Nurse Rodriguez, and Nurse Hart.

## C.   Plaintiff's allegations appear insufficient to state a claim against defendants Kurtzman and Kuanda.

Plaintiff's Complaint alleges that defendant Nurse Kurtzman was a registered nurse at CVSP at the time the events giving rise to this action occurred and that she had a duty to provide adequate medical care for prisoners.  (Docket No. 1 at 11.) Plaintiff, however, fails to set forth any factual allegations that Nurse Kurtzman took any action, participated in another's action, or failed to take any action that she was required to do that caused plaintiff's alleged constitutional violations.  In his

Opposition, plaintiff concedes that he failed to state a claim against Nurse Kurtzman and voluntarily dismisses this defendant.  (Opp. at 1, 3, Docket No. 59.)

Further, the Complaint alleges that defendant Correctional Officer Kuanda twice refused plaintiff "entry" to the prison's medical facility and told plaintiff, "they were [sic] busy, deal with it yourself" or that plaintiff should "leave the clinic area."  (*Id.* at 14-15.)  Plaintiff's Complaint fails to allege that Correctional Officer Kuanda, who is not alleged to be a medical care provider, was subjectively aware of any facts from which a reasonable inference could have been drawn that plaintiff was suffering from any serious medical need.  Although plaintiff alleges that, on September 12, 2014, a "lump began developing with pain" and that he was still suffering from "acute pain" five days later on September 17, 2014, when defendant Kuanda told him to leave the facility, plaintiff also alleges that he was examined by Dr. Murakonda on September 11, 2014, and September 15, 2014.  (*Id.* at 14-15.)  No factual allegations in the Complaint plausibly suggest that Correctional Officer Kuanda was subjectively aware that refusing to provide plaintiff with immediate access to medical care providers during a period in which plaintiff was being seen by Dr. Murakonda created a substantial risk of serious harm to plaintiff.

Plaintiff cites *Plata v. Brown*, 563 U.S. 493 (2011), in support of his contention that a correctional officer may violate a prisoner's Eighth Amendment right to adequate medical care by acting as a "gatekeeper" and "refus[ing] to allow plaintiff access to medical staff."  (Opp. at 13-14.)  *Plata*, however, required the State of California to reduce prison overcrowding to improve a **systemic** denial of medical services to inmates.  Accordingly, *Plata* is inapposite to the type of claim that plaintiff raises – an alleged denial of medical treatment to one inmate in response to one serious medical condition.  Plaintiff's Complaint raises no allegation that the state has provided insufficient resources to provide inmates at CVSP with adequate medical care.  *See, e.g., Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) ("If the state provided insufficient resources to accord inmates

adequate medical care, it could be compelled to correct those conditions.").

Accordingly, the Court finds that plaintiff's factual allegations, even accepted as true and construed in the light most favorable to plaintiff, are insufficient to nudge his claims against defendant Kuanda "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### D.      Plaintiff's allegations appear insufficient to state a claim against Dr. S. Lee or the Hospital.[3]

Plaintiff's Complaint alleges that Dr. S. Lee performed surgery on plaintiff "without a glitch" by Dr. S. Lee.  (Docket No. 1 at 13.)  Dr. S. Lee provided a "penrose drain" for drainage," and he "forwarded post-op instructions to medical staff at CVSP for the removal of the penrose drain for the following day."  Dr. S. Lee, however, "did not instruct the institution as to post-op dressing changes to surgical area."  (*Id*.)  Plaintiff later was seen by Dr. S. Lee by "telemeds."  Dr. S. Lee ordered an ultrasound.  (*Id*. at 15-16.)  When the ultrasound revealed that the penrose drain required removal, Dr. S. Lee then performed surgery to remove the drain.  (*Id*. at 16.)  Dr. S. Lee said that "he had done thousands of these procedures and never has seen this [sic]."  (*Id.*)

The only allegations pertaining to the Hospital are that Dr. S. Lee was employed by the Hospital, that the Hospital is "under contract" to provide medical

---

[3]    As alleged in the Complaint, defendant Dr. S. Lee is a "private doctor" who provided medical services to plaintiff at the Hospital, which is a non-prison medical facility.  (Docket No. 1 at 9.)  A default was entered in this case against Dr. S. Lee on October 15, 2015.  In a separate Order, the Court has granted Dr. S. Lee's Motion pursuant to Fed. R. Civ. P. 55(c) to set aside the default.  (*See* Docket No. 58.)  However, because this Order dismisses plaintiff's claims against Dr. S. Lee as raised in the Complaint, the Court denies as moot defendant's request for leave to file a proposed Motion to Dismiss the Complaint.  (*See* Docket No. 58 at 2, No. 58-5.)  Rather, the Court has screened the Complaint with respect to the claims against Dr. S. Lee and the Hospital pursuant to the PLRA.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

care to inmates at CVSP, and that Dr. S. Lee performed plaintiff's surgery at the Hospital.  Plaintiff also alleges that the Hospital knew or should have known that Dr. S. Lee was "unfit or incompetent." (*Id.* at 9, 13.)

Plaintiff's Eighth Amendment claims arise from his allegations that the deliberate indifference of defendants caused "an infection in his scrotum, pain" and an "additional surgery to remove the penrose drain." (*Id.*)  Plaintiff's factual allegations, however, reflect that Dr. S. Lee provided adequate medical care when he performed the initial surgery without any problem, provided a penrose drain after surgery, sent plaintiff back to the prison with instructions on when the penrose drain was to be removed, later ordered an ultrasound, and ultimately performed a second surgery to remove the penrose drain.  The only negative allegation in the Complaint concerning Dr. S. Lee is that he failed to instruct prison staff on when to change the dressing.  Such alleged negligence in providing instructions for routine care following surgery does not violate a prisoner's Eighth Amendment rights. *Toguchi*, 391 F.3d at 1057.

In addition, even assuming for purposes of this Order that the Hospital can be considered to have been acting under state law, the Supreme Court in *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978), held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their own illegal acts").  Moreover, liability against a local government entity may not be premised on an isolated or sporadic incident. *See, e.g., Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").  Rather, plaintiff must show that a specific policy was the "actionable cause" of the alleged constitutional violation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation.").

Not only does plaintiff's Complaint fail to allege any underlying constitutional violation by Dr. S. Lee, but plaintiff does not purport to allege that the execution of any specific policy, regulation, custom or the like of the Hospital was the "actionable cause" of any alleged constitutional violation.  Further, plaintiff's one incident of medical treatment by the Hospital does not give rise to a claim premised on an alleged custom or practice of the Hospital.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Trevino*, 99 F.3d at 918.

Accordingly, the Court finds that plaintiff's factual allegations, even accepted as true and construed in the light most favorable to plaintiff, are insufficient to allege any civil rights claim against Dr. S. Lee or the Hospital.

### E.   Plaintiff's allegations plausibly suggest an Eighth Amendment claim against some defendants in their individual capacities.

In his Complaint, plaintiff alleges that, following his return to prison from the Hospital, he was "bleeding excessively" such that his "boxers" became soaked, he was in "acute pain," he could feel the intact penrose drain, he developed swelling and a "lump" in the area of the surgery, and the pain caused headaches and loss of

sleep.  Plaintiff repeatedly sought medical attention beginning the day of the surgery on September 10, 2014, until a second surgery was performed on October 30, 2014.  The second surgery was necessary to remove the penrose drain from the "protective skin" that had "grown around the drain" because defendants' did not promptly remove the drain.  (Docket No. 1 at 13-17.)  Plaintiff's Complaint further alleges that, although Dr. Murakonda examined plaintiff several times, Dr. Murakonda repeatedly (and incorrectly) told plaintiff that "it's all normal," and refused to remove the penrose drain.  Plaintiff further alleges that defendants Kalian, Knapp, and Soto refused to examine him at various times and or refused to change his dressing, despite plaintiff's complaints of excessive bleeding and acute and continuing pain.  (*Id.*)

The Correctional Defendants contend that, even if defendants were incorrect concerning the need to remove the penrose drain, their errors were mere "medical negligence" and are insufficient "as a matter of law" to state a claim for deliberate indifference.  (Docket No. 51 at 8-10, 12.)  Although it is true that mere negligence does not rise to the level of deliberate indifference, treatment that was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to a prisoner's health does give rise to an Eighth Amendment Claim.  *See Toguchi*, 391 F.3d at 1058.  Giving plaintiff the benefit of any doubt and construing his factual allegations liberally for purposes of deciding the Correctional Defendants' Motion, the Court finds that plaintiff's Complaint pleads sufficient facts against defendants Murakonda, Kalian, Knapp, and Soto to nudge his Eighth Amendment claim across the line from conceivable to plausible.  *See Twombly* 550 U.S. at 570.  Although plaintiff's likelihood of recovery may appear remote to defendants, that is not the test.  The issue in deciding a motion to dismiss is not whether a plaintiff will ultimately prevail after trial, but whether he is entitled to offer evidence to support the claims.  *See Starr*, 652 F.3d at 1216-17 ("The standard at this stage of the litigation is not that plaintiff's explanation must be true or even

probable.  The factual allegations of the complaint need only plausibly suggest an entitlement to relief." (internal quotation marks omitted)).  The factual allegations of plaintiff's Complaint plausibly suggest that the refusal by some defendants to adequately treat plaintiff caused plaintiff to suffer both a second surgery and the "unnecessary and wanton infliction of pain."  *Estelle*, 429 U.S. at 104.

Accordingly, it appears to the Court that plaintiff's factual allegations in the Complaint, when accepted as true and construed in the light most favorable to plaintiff, are sufficient to allege a plausible Eighth Amendment claim against defendants Murakonda, Kalian, Knapp, and Soto in their individual capacities.

### F.   Plaintiff's prayer for punitive damages is dismissed.

Defendants contend that plaintiff's Complaint does not allege facts establishing that defendants acted with an evil motive or intent.  Further, the allegations that various defendants gave him gauze and examined him are "contrary to any evil motive or intent."  (Motion, Docket No. 51 at 20; Reply at 9.)  In addition, defendants contend that, although plaintiff references "derogatory remarks" in his Opposition, the Complaint does not allege any such remarks. (Reply at 9.)

Punitive damages are available against an individual defendant in an action pursuant to § 1983 action only when evidence shows that the defendant's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (a "jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others").

Plaintiff's Complaint merely states the conclusory allegations that defendants "knew or should have known that their conduct or omission[s] created an

unreasonable risk of harm to plaintiff" and that "all defendants acts were willful, intentional, wanton and in conscious disregard of plaintiff's rights." (Docket No. 1 at 19-20.)   The Court concurs with the Correctional Defendants that, although plaintiff argues in his Opposition that defendants made "derogatory comments" or "derogatory remarks," (Opp. at 15-16), his Complaint does not so allege.  Rather, the Complaint only alleges that defendants Knapp and Kalian said, "I'm not touching them" [sic] on September 11, 2014 (Docket No. 1 at 14), and that Correctional Officer Kuanda told plaintiff that the medical staff was "busy" and that plaintiff should "deal with it" himself.   None of these comments raise a reasonable inference that these defendants acted with a reckless or callous indifference to plaintiff's constitutional rights.  (Docket No. 1 at 15.)

Viewing the allegations in the Complaint in the light most favorable to plaintiff, the Court finds that plaintiff has failed to allege that a specific defendant acted with a reckless or callous indifference to plaintiff's constitutional rights in refusing to change plaintiff's dressing, refusing to examine plaintiff, or refusing to remove the penrose drain.  Accordingly, plaintiff's prayer for punitive damages is dismissed without prejudice.

### G.   Plaintiff's Complaint is dismissed with leave to amend.

The Court is mindful that, because plaintiff is appearing *pro se*, the Court must construe the allegations of the Complaint liberally and must afford plaintiff the benefit of any doubt.  *See Karim-Panahi*, 839 F.2d at 623.   Additionally, it is particularly important in a civil rights case filed by a *pro se* inmate to attempt to ascertain plaintiff's claims to protect his access to the courts.  *See Alvarez*, 518 F.3d at 1158.   Moreover, a *pro se* plaintiff generally must be provided with an opportunity to amend the allegations of a pleading to attempt to correct the deficiencies of his claims.  *See Rosati*, 791 F.3d at 1039 ("A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear

that the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks omitted).  In this case, plaintiff has not yet been provided with an opportunity to amend his pleading to correct the deficiencies of some of his claims.

The Court therefore grants the Correctional Defendants' Motion, but dismisses the Complaint with leave to amend.[4]

\*\*\*\*\*\*\*\*\*\*\*

**If plaintiff still desires to pursue this action, he is ORDERED to file a First Amended Complaint no later than March 21, 2016**, remedying the pleading deficiencies discussed above.  The First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original complaint, or any other pleading, attachment, or document.

If plaintiff elects to proceed only on his Eighth Amendment claims against defendants Murakonda, Kalian, Knapp, and Soto in their individual capacities, plaintiff should file a First Amended Complaint alleging only those claims.  If, however, plaintiff wishes to pursue his Eighth Amendment claims against any other defendant, plaintiff must remedy the deficiencies of those claims, as discussed herein.

---

[4]   Plaintiff is advised that this Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim.  Accordingly, although this Court believes that you have failed to plead sufficient factual matter in your Complaint, accepted as true, to state a claim to relief that is plausible on its face, you are not required to omit any claim or defendant in order to pursue this action.  However, if you decide to pursue a claim in a First Amended Complaint that this Court has found to be insufficient, then this Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to your right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize.  Plaintiff is admonished that, if he desires to pursue this action, he must sign and date the civil rights complaint form, and he must use the space provided in the form to set forth all of the claims that he wishes to assert in a First Amended Complaint.

**Plaintiff is further admonished that, if he fails to timely file a First Amended Complaint, or fails to remedy the deficiencies of his pleading as discussed herein, the Court will recommend that the action be dismissed with prejudice on the grounds set forth above and for failure to diligently prosecute.**

In addition, if plaintiff no longer wishes to pursue this action, he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

**IT IS SO ORDERED.**

DATED:  February 17, 2016

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE